*Laflam v. Rutland Probation and Parole*, No. 423-7-14 Wncv (Teachout, J., June 24, 2015)

[The text of this Vermont trial court opinion is unofficial. It has been reformatted from the original. The accuracy of the text and the accompanying data included in the Vermont trial court opinion database is not guaranteed.]

## STATE OF VERMONT

| | |
|---|---|
| **SUPERIOR COURT** | **CIVIL DIVISION** |
| **Washington Unit** | **Docket # 423-7-14 Wncv** |

**CHRISTOPHER J. LAFLAM**

**v.**

**RUTLAND PROBATION AND PAROLE**

### DECISION AND ORDER

A court trial was held on February 2, 2015. Petitioner was present and represented by Attorney Seth E. Lipschutz. Respondent was represented by Attorney Robert M. LaRose. Evidence was admitted. Following the hearing, Attorney LaRose submitted an audio recording of the furlough revocation hearing that is the basis of this case. A status conference was held on May 18, 2015 to discuss with the parties certain procedural and legal issues that arose in the course of preparing a ruling, after which the parties were given a chance to submit further briefing.

Petitioner is an inmate currently in the custody and care of the Commissioner of the Department of Corrections. He was placed in the community on furlough, and his furlough was revoked at a furlough revocation hearing held in May of 2014. Petitioner claims that there was insufficient factual evidence to support revocation of furlough.

### FACTS

While Petitioner was on furlough from jail living at his grandmother's house, an approved residence, he was mowing the lawn when he was attacked by disturbed bees who stung him numerous times. He had a significant allergic reaction over the next few days and became extremely swollen and impaired. He stayed in contact with his probation officer, with whom he discussed the need for getting medical attention and who supported such attention. When he went to pick up prescription medication on May 15, 2014, he did not contact his probation officer in advance to get specific permission for being away from the residence. His probation officer stopped at his grandmother's home and learned that he had gone to the pharmacy to pick up medication. He was not authorized to be away from his home at that time.

On Saturday, May 17, 2014, Vergennes police officers went to his grandmother's home and found him in an excited, delirious state of mind. His grandmother gave the officers permission to search the house. On a high shelf, they found drug paraphernalia,

including empty heroin bags and a burned spoon. Mr. LaFlam testified at the hearing that those items must have been left over from some past time, that he had not used drugs while on furlough, although he had done so in the past, but that he had never used a spoon, and that he had specifically refused to take pain medication for the bee stings because he did not want to fail a urine test. As a result of the home visit, the Department terminated approval of his grandmother's residence. Three days later he was returned to jail.

At a furlough revocation hearing held on May 25, 2014, he was charged with three violations: being out of bounds, use of drugs, and loss of residence. After hearing the evidence, the hearing officer found him in violation by being out of bounds and losing an approved residence. He was not found guilty of use of drugs.

ANALYSIS

Mr. LaFlam argues that his probation officer had previously supported medical attention for his bee sting reaction, and that he should not have been violated for going to the pharmacy to pick up medication for that condition. At the hearing, Mr. LaFlam admitted that he did not have permission to be away from his home at the time he went to pick up his medication. The record shows that he was not immediately violated for that alone. The hearing officer explained that, although it was a violation, it most likely was not, by itself, a significant reason to support return to jail.

The other violation was loss of residence, which apparently was predicated on the use of drugs for which he was found not guilty. He argues that his delirium was consistent with the effects of his allergic reaction, and that since he was not found to have used drugs, he should not have lost his residence and been returned to prison. The hearing officer stated that approval or nonapproval of a residence is entirely within the discretion of the Department of Corrections, which need not prove a reason to either withhold or terminate approval of a residence, and that since his residence was no longer approved after the discovery of the drug paraphernalia, there were proper grounds for revocation based on loss of residence alone.

The parties disagree about the standard of review. The State argues that the "some evidence" rule that applies to ordinary disciplinary cases similarly applies to a furlough revocation hearing. See *King v. Gorczyk*, 2003 VT 34, ¶ 7, 175 Vt. 220 (explaining that a decision from an inmate disciplinary hearing must be supported by "some evidence"). Mr. LaFlam argues that a clearly erroneous standard applies. The Vermont Supreme Court has not ruled on what standard applies in a case like this and the court will not attempt to resolve that matter now.

The DOC's furlough violation directive recognizes that modern furlough has due process implications. See generally, e.g., *Young v. Harper*, 520 U.S. 143 (1997) (ruling that Oklahoma's conditional release program is sufficiently similar to traditional parole that it is subject to the due process protections applicable to parole as described in *Morrissey v. Brewer*, 408 U.S. 471 (1972)); see also Directive #410.02, Policy ("The

Department is responsible for providing due process procedures in each case where the offender is incarcerated."). Accordingly, at a due process hearing, a hearing officer determines by a preponderance of the evidence whether the inmate "violated a condition or conditions of . . . furlough." Directive #410.02, Procedural Guidelines § 1(a). Based on all of the evidence presented, the hearing officer finds the inmate guilty or not guilty of the charged violation. *Id*. § 5(d). If guilty, the hearing officer does not determine a sanction. The case is referred for a case staffing to determine what incarceration may be required and any requirements that the inmate must satisfy prior to release on furlough again. *Id*. §§ 5(f) (referral for case staffing), 11 (case staffing process). The inmate has the right to appeal the determination of guilt, *id*. § 6, and a separate right to grieve the resulting case staffing, *id*. § 11(b).

In Mr. LaFlam's case, he admitted being out of bounds and that, according to the hearing officer, would not have been likely to result in a return to jail absent other violations. He was not found guilty of using drugs.

With regard to the loss of residence violation, the hearing officer made clear that the only issue was whether the approval for the residence had been withdrawn, not whether there was any reasonable basis for the approval to have been withdrawn. He stated that the DOC has complete discretion to approve a residence and complete discretion to un-approve a residence. He treated residence approval as a furlough condition and found Mr. LaFlam guilty of violating that condition when the DOC un-approved the residence.

Framing the issue in this manner, of course, made the due process hearing a pointless exercise. A furlough "violation" predicated on the DOC's exercise of its own unbounded discretion leaves nothing for the inmate to challenge at the due process hearing and, in effect, gives the DOC unfettered discretion to determine that any furloughee is in violation of furlough conditions at any time merely by declaring that approval of a residence is withdrawn, without having to prove any conduct on the part of the furloughee. That leaves nothing for due process to protect and is inconsistent with the rights recognized in *Young v. Harper*, 520 U.S. 143 (1997), *Morrissey v. Brewer*, 408 U.S. 471 (1972)), and the evident intent of Directive # 410.02 itself.

The hearing officer's determination of guilt on the loss of residence charge is error as a matter of law. It was not based on a finding of conduct of Mr. LaFlam.[1]

The DOC argues that any such error is harmless because the DOC had good reason to case staff Mr. LaFlam in any event because of the undisputed out-of-bounds violation. However, the case staffing that occurred necessarily was predicated on the furlough violations that were found, which included loss of residence. If Mr. LaFlam had been found guilty of conduct that was in violation of a furlough condition and justifiably

---

[1] The Department argues that there were filled-out checks from a closed account at the residence and that an officer at the house expressed some concern for the grandmother's safety, but there was no finding about these circumstances and specifically no finding that they involved conduct on Mr. LaFlam's part that justifiably resulted in loss of approval of the residence.

triggered loss of residence, that would have a significant impact on case staffing analysis and outcome. He fact, he was not found guilty of any such conduct. The only violation in this case was the relatively innocuous one of having been out of bounds when he went for a prescription on May 15th, two days before the day of the home visit and delirium. He was not found guilty of any conduct that either occurred or was discovered on May 17th.

The court cannot conclude that the hearing officer's error was harmless, as it would have had a significant impact on the decisions made at the case staffing.

<u>ORDER</u>

The hearing officer's determination is vacated in total. This case is remanded for a new hearing consistent with Directive # 410.02.

Dated at Montpelier, Vermont, this __ day of June 2015.

_____
Honorable Mary Miles Teachout
Superior Court Judge

4